## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DANIEL B. STORM, HOLLY P. WHITE, DORIS MCMICHAEL, and KYLE WILKINSON, individually and on behalf of all others similarly situated, | : : : : : | Civil Action No.: 1:14-cv-01138-JEJ |
| | : | Judge John E. Jones, III |
| | : | |
| Plaintiffs, | : | *ELECTRONICALLY FILED* |
| | : | |
| v. | : | |
| | : | |
| PAYTIME, INC., | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

# TABLE OF CONTENTS

**Page**

I.  STATEMENT OF THE CASE ................................................... 2

    A.  FACTUAL BACKROUND ................................................ 2

    B.  PROCEDURAL HISTORY ............................................... 7

II.  ARGUMENT ................................................................ 7

    A.  PLAINTIFFS HAVE STANDING TO BRING THEIR AMENDED COMPLAINT ........................................... 7

        1.  The Rule 12(b)(1) Standard Of Review ..................... 8

        2.  Plaintiffs' Amended Complaint Satisfies The Requirements For Article III Standing .................... 9

            a.  Literal Certainty Of Harm Is *Not* Required To Establish Injury-In-Fact ........................ 11

            b.  Numerous Courts Have Found Standing In Data-Breach Cases ............................. 15

            c.  *Reilly* Is Distinguishable ...................... 19

            d.  Paytime's Other Cited Authority Is Inapposite Or Distinguishable ............................. 21

    B.  PLAINTIFFS' AMENDED COMPLAINT STATES A COGNIZABLE NEGLIGENCE CLAIM ..................... 23

        1.  The Rule 12(b)(6) Standard of Review .................... 23

        2.  Plaintiffs Have Sufficiently Alleged Actual Injury Pursuant To The Theft Of Their Confidential Information ........................................... 25

3.      The Amended Complaint Adequately Alleges                26
        Proximate Causation

4.      The Economic Loss Doctrine Is Not Applicable            27
        Because Plaintiffs Constitute A Well-Defined
        Foreseeable Class And Paytime's Liability Is
        Proportional To Fault And Capable Of Being
        Limited To Foreseeable Damages

C.   THE AMENDED COMPLAINT SETS FORTH A                         31
     VALID CLAIM FOR BREACH OF CONTRACT

1.      Plaintiffs Have Sufficiently Alleged That They Are      31
        Third-Party Beneficiaries To The Contract Between
        Paytime And Their Current And Former Employers

D.   PAYTIME'S MOTION TO STRIKE PLAINTIFFS'                     33
     CLASS ALLEGATIONS SHOULD BE DENIED
     BECAUSE PLAINTIFFS' CLASS ALLEGATIONS
     CANNOT BE ADJUDICATED ON A RULE 12
     MOTION

III.   CONCLUSION                                               39

## TABLE OF AUTHORITIES

**Decisional Authority**                                                          **Page(s)**

*6803 Blvd. E., LLC v. DIRECTV, Inc.*, No. 12-2657, 2012 WL          36
3133680 (D.N.J. July 31, 2012)

*Abdallah v. Coca-Cola Co.*, No. 98-3679, 1999 WL 527835 (N.D. Ga.     36
July 16, 1999)

*Adams v. Copper Beach Townhome Communities*, 816 A.2d 301 (Pa.        28
Super. 2003)

*Aikens v. Baltimore and Ohio R. Co.*, 501 A.2d 277 (Pa. Super. 1985).   27-28

*Althaus v. Cohen*, 756 A.2d 1166 (Pa. 2000)                             31

*Am. Fed'n of Gov't Employees v. Hawley*, 543 F. Supp. 2d 44 (D.D.C.    16
2008)

*Anderson v. Hannaford Bros. Co.*, 659 F. 3d 151 (1st Cir. 2011)        17

*Andrews v. Home Depot, USA, Inc.*, No. 03-5200, 2005 WL 1490474       36
(D.N.J.  June 23, 2005)

*Arch v. The American Tobacco Co., Inc.*, 175 F.R.D. 469 (E.D.          37
Pa.1997)

*Arcilla v. Adidas Promotional Retail Operations, Inc.*, 488 F. Supp. 2d   17
965 (C.D. Cal 2007)

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)                                24

*Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289 (1979)       8-9

*Ballentine v. U.S.*, 486 F.3d 806 (3d Cir. 2007)                       10

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)                   23-25

*Bilt-Rite Contractors, Inc. v. Architectural Studio*, 866 A.2d 270 (Pa. 2005) — 27-29

*Bowman v. Wilson*, 672 F.2d 1145 (3d Cir. 1982) — 10

*Brittingham v. Cerasimo, Inc.*, No. 08-216, 2009 WL 1010427 (N.D. Ind. Apr. 14, 2009) — 16

*Caudle v. Towers, Perrin, Forster & Crosby, Inc.*, 580 F. Supp. 2d 273 (S.D.N.Y. 2008) — 16

*Chamber of Commerce of the U.S. v. EPA*, 642 F.3d 192 (D.C. Cir. 2011) — 13

*Cherri v. Mueller*, No. 12-11656, 2013 WL 2558207 (E.D. Mich. June 11, 2013) — 15, 18

*Chevalier v. Baird Sav. Ass'n*, 66 F.R.D. 105 (E.D. Pa. 1975) — 8

*Chevron Corp. v. Donziger*, 974 F. Supp. 2d 362 (S.D.N.Y. 2014) — 14

*Clapper v. Amnesty Int'l*, 133 S. Ct. 1138 (2013) — 11-12, 15, 17

*Constitution Party of Pa. v. Aichele*, 757 F.3d 347 (3d Cir. 2014) — 8

*Danisco U.S. Inc. v. Novozymes A/S*, 744 F.3d 1325 (Fed. Cir. 2014) — 14

*Danvers Motor Co. v. Ford Motor Co.*, 432 F.3d 286 (3d Cir. 2005) — 10

*Eckroth v. Pennsylvania Elec., Inc.*, 12 A.3d 422 (Pa. Super. 2010) — 26

*Excavation Technologies, Inc. v. Columbia Gas Co. of Pennsylvania*, 985 A.2d 840 (Pa. 2009) — 27

*Galaria v. Nationwide Mut. Ins. Co.*, 998 F. Supp. 2d 646 (S.D. Ohio 2014) — 23

*Grasty v. Amalgamated Clothing & Textile Workers Union*, 828 F.2d 123 (3d Cir. 1987) — 37

*Gutierrez v. Johnson & Johnson, Inc.*, 2002 U.S. Dist. LEXIS 15418          36
(D.N.J. 2002)

*Guy v. Liederbach*, 459 A.2d 744 (Pa. 1983)          31

*Hedges v. Obama*, 724 F.3d 170 (2nd Cir. 2013)          14

*Hildebrand v. Dentsply Intern., Inc.*, 264 F.R.D. 192 (2010)          10

*Holmes v. Countrywide Fin. Corp.*, No. 08-00205, 2012 WL 2873892          16
(W.D. Ky. July 12, 2012)

*Holt v. Navarro*, 932 A.2d 915 (Pa. Super. 2007)          26

*In re Adobe Sys., Inc. Privacy Litig.*, ___ F. Supp. 2d ___, 2014 WL          14-17,
4379916 (N.D. Cal. Sept. 4, 2014)          23

*In re Barnes & Noble Pin Pad Litig.*, No. 12-8617, 2013 WL 4759588          23
(N.D. Ill. Sep. 3, 2013)

*In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305 (3d Cir. 2008)          34

*In re Sci. Applications Int'l Corp. Backup Tape Data Theft Litig.*, ___          21-22
F. Supp. 2d ___, 2014 WL 1858458 (D.D.C. May 9, 2014)

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,          16, 18
996. F. Supp. 2d 942 (S.D. Cal. 2014)

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,          14-15
MDL 11MD2258 AJB MDD, 2014 WL 223677 (S.D. Cal. Jan. 21,
2014)

*Korman v. Walking Co.*, 503 F. Supp. 2d 755 (E.D. Pa. 2007)          35

*Krottner v. Starbucks Corp.*, 628 F.3d 1139 (9th Cir. 2010)          15

*Landsman & Funk PC v. Skinder-Strauss Assocs.*, 640 F.3d 72 (3d Cir.          35
2011)

*Lozano v. City of Hazleton*, 496 F. Supp. 2d 477 (M.D. Pa. 2007)          10

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)     10

*McLoughlin v. People's United Bank, Inc.*, No. 08-944, 2009 WL
2843269 (D. Conn. Aug. 31, 2009)     16

*McPeak v. S-L Distribution Co.*, No. 12-348, 2014 WL 4388562
(D.N.J. Sept. 5, 2014)     38

*Mills v. Serv. First Credit Union*, No. 11-686, 2011 WL 3236313
(M.D. Pa. July 28, 2011)     35

*Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139 (2010)     14

*Moyer v. Michaels Stores, Inc.*, No. 14-561, 2014 WL 3511500 (N.D.
Ill. July 14, 2014)     15-16

*Myers v. MedQuist, Inc.*, No. 05-4608, 2006 WL 3751210 (D.N.J.
December 20, 2006)     36

*Mylan, Inc. v. Zorich*, 2012 WL 527662 (W.D. Pa. Feb. 16, 2012)     31-32

*NBL Flooring, Inc. v. Trumball  Ins. Co.*, No. 10-4398, 2011   WL
4481918 (E.D. Pa. Sept. 27, 2011)     35-36

*NCAA v. Gov. of N.J.*, 730 F.3d 208 (3d Cir. 2013)     9-10

*New York State Elec. & Gas Corp. v. Westinghouse Elec. Corp.*, 564
A.2d 919 (Pa. Super. 1989)     27

*Oravsky v. Encompass Ins. Co.*, 804 F. Supp. 2d 228 (D.N.J. 2011)     36

*Organic Seed Growers & Trade Ass'n v. Monsanto Co.*, 718 F.3d 1350
(Fed. Cir. 2013)     14

*P.V.  ex rel. Valentin v. School Dist. of Phila.*, No. 11-04027, 2011 WL
5127850 (E.D. Pa. Oct. 31, 2011)     35

*People Exp. Airlines, Inc. v. Consol. Rail Corp.*, 495 A.2d 107 (N.J.
1985)     29

*Phillips v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008)    24, 25

*Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629 (7th Cir. 2007)    15

*Reilly v. Ceridian Corp.*, 664 F.3d 38 (3d Cir. 2011)    13, 19, 20-21

*Robinson v. Dalton*, 107 F.3d 1018 (3d Cir. 1997)    9, 21

*Rocks v. City of Philadelphia*, 868 F.2d 644 (3d Cir. 1989)    23

*Rose v. Rothrock*, No. 08-3884, 2009 WL 1175614 (E.D. Pa. Apr. 29, 2009)    37

*Ruiz v. Gap Inc.*, 622 F. Supp. 2d 908, 910 (N.D. Cal. 2009)    16

*Sapp Roofing Co. v. Sheet Metal Workers' International Assoc.*, 713 A.2d 627 (Pa. 1998)    25

*Scarpitti v. Weborg*, 609 A.2d 147 (Pa. 1992)    31-32

*Southern Cross Overseas Agencies v. Wah Kwong Shipping Grp.*, 181 F.3d 410 (1999)    21

*Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162 (3d Cir. 2008)    28, 31

*Storino v. Borough of Point Pleasant Beach*, 322 F.3d 293 (3d Cir. 2003)    8-9

*Strautins v. Trustwave Holdings, Inc.*, ___ F. Supp. 2d ___, 2014 WL 960816 (N.D. Ill. Mar. 12, 2014)    22

*Sullivan v. DB Investments, Inc.*, 667 F.3d 273 (3d Cir. 2011)    34

*Summers v. Earth Island Inst.*, 555 U.S. 488 (2009)    9-10

*Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334 (2014)    10

*Telecomm. Network Design v. Brethren Mut. Ins. Co.*, 5 A.3d 331 (Pa. Super. 2010)                                                                 25

*Thomas More Law Ctr. v. Obama*, 651 F.3d 529 (6th Cir. 2011)                13

*Tonka Corp. v. Rose Art Indus., Inc.*, 836 F.Supp. 200 (D.N.J.1993)          37

*United Government Sec. Officers of America v. Exelon Nuclear Sec., LLC*, No. 11-1928, 2011 WL 5340043 (E.D. Pa. Nov. 4, 2011)                    37

*Vlachos v. Tobyhanna Army Depot Fed. Credit Unio*n, No. 11-0060, 2011 WL 2580657 (M.D. Pa. June 29, 2011)                                          35

*Warth v. Seldin*, 422 U.S. 490 (1975)                                      8, 11

*Whitmore v. Ark.*, 495 U.S. 149 (1990)                                    11-13

*Wilkerson v. New Media Technology Charter School Inc.*, 522 F.3d 315 (3d Cir. 2008)                                                                24

*Witriol v. LexisNexis Group*, No. 05-2392, 2006 WL 4725713 (N.D. Cal. Feb. 10, 2006)                                                              16

*Yeager's Fuel, Inc. v. Pennsylvania Power & Light Co.*, 162 F.R.D. 482 (E.D. Pa. 1995)                                                              38

## Miscellaneous Authority

1 Joseph M. McLaughlin, MᴄLᴀᴜɢʜʟɪɴ ᴏɴ Cʟᴀss Aᴄᴛɪᴏɴs § 3.4 (7th ed. 2010)                                                                           36

5C Wright, Miller & Kane, Fᴇᴅᴇʀᴀʟ Pʀᴀᴄᴛɪᴄᴇ & Pʀᴏᴄᴇᴅᴜʀᴇ Cɪᴠɪʟ 3ᴅ § 1785.3, 2006 WL 3751210                                                        36

7AA Wright, Miller & Kane, Fᴇᴅᴇʀᴀʟ Pʀᴀᴄᴛɪᴄᴇ ᴀɴᴅ Pʀᴏᴄᴇᴅᴜʀᴇ Cɪᴠɪʟ 3ᴅ § 1785.3                                                                       36

Charles A. Wright & Arthur R. Miller, Mary Kay Kane, 7AA Fᴇᴅ. Pʀᴀᴄ. & Pʀᴏᴄ. Cɪᴠ.2ᴅ § 1785.1 (2004)                                              11

Jennifer Bjorhus, *After Home Depot breach, rogue website hawking Minn. card data*, Star Tribune (Minneapolis), Sept. 12, 2014     13

Restatement (Second) of Contracts § 302(1)(b) (1979)     31

Plaintiffs Daniel B. Storm, Holly P. White, Doris McMichael and Kyle Wilkinson (collectively, "Plaintiffs") and the Class suffered irreversible injury when their sensitive personal and financial data was stolen from Defendant Paytime, Inc. ("Paytime" or "Defendant") due to Defendant's failure to adequately protect that information.  Now, having caused this harm, Defendant seeks to escape liability by claiming that Plaintiffs were either not injured or have no legal basis to seek redress for their injuries.  In essence, Paytime seeks a ruling from this court that would insulate companies entrusted with sensitive information from any liability when that information is stolen on account of a company's failure to adequately protect that information.  For the reasons set forth in more detail herein, Defendant's Motion to Dismiss Plaintiffs' Amended Complaint should be denied in its entirety because (1) Plaintiffs have Article III standing to bring their Amended Complaint, (2) the Amended Complaint states a legally cognizable negligence claim, (3) Plaintiffs have sufficiently alleged that they are third-party beneficiaries to the contract between Defendant and their current and former employers, and (4) Plaintiffs' class allegations cannot be adjudicated on a Rule 12 motion.

I.   **STATEMENT OF THE CASE**

A.   **FACTUAL BACKROUND**

Plaintiffs' claims for negligence and breach of contract in this action stem from the massive data breach of the computer network of national payroll service bureau Paytime wherein the names, Social Security numbers, bank account data, street addresses, birth dates, wages, hiring dates, and phone numbers of 233,000 individuals nationwide were accessed and stolen from Paytime's computer systems. *See* Am. Compl. [Dkt. No. 17] ¶¶ 1-5. After collecting this sensitive personal and financial information – which Plaintiffs and members of the Class were required to provide as condition of their employment – in the course of performing its duties under payroll processing and human resources management contracts with the current and former employers of Plaintiffs and Class members, Paytime failed to take adequate measures to ensure that the information was protected.

As a direct and predictable result of Paytime's failures, Plaintiffs' and the Class' sensitive personal and financial information was stolen by third-party computer system hackers and is now, quite literally, available for purchase by anyone desiring to commit identity theft-related fraud. In essence, Plaintiffs and Class members have lost their personal and financial identities, as a direct result of Paytime's failures to adequately protect its computer systems. As a direct result of

Paytime's breach of its legal and contractual duties, Plaintiffs and Class members have suffered damages.[1]  *See* Am. Compl. ¶¶ 14-22, 27.

The Amended Complaint in this matter sets forth causes of action for both negligence (Count I) and breach of contract (Count II).  Plaintiffs bring both of these claims on behalf of not only themselves, but also a class of similarly situated persons which includes "[a]ll persons in the United States whose personal and financial information was contained in or on Paytime's computer systems, whose personal and financial information was stolen or otherwise misappropriated as a result of the Data Breach."  Am. Compl. ¶ 30.

With respect to their negligence claim, Plaintiffs, in their Amended Complaint, specifically allege that:

- Paytime had a duty to exercise reasonable care to protect and secure Plaintiffs' and the proposed Class members' personal and financial information within its possession or control from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties. This highly confidential personal and financial information includes but is not limited to Social Security numbers, dates of birth, full legal names, addresses, bank account information, and other personal information.

- Paytime's duty included, among other things, designing, maintaining, and testing its security systems to ensure that Plaintiffs' and the proposed Class members' personal and financial information in its possession was adequately secured and protected.

- Paytime further had a duty to implement processes that would detect a breach of its security systems in a timely manner.

---

[1] At least one Plaintiff has already suffered direct economic loss as a result of the data breach.  See Am. Compl. ¶ 29.

- Through its acts or omissions, Paytime breached its duty to use reasonable care to protect and secure Plaintiffs' and the proposed Class members' personal and financial information within its possession or control. Paytime breached its duty by failing to adopt, implement, and maintain adequate security measures to safeguard Plaintiffs' and proposed Class members' personal and financial information, failing to adequately monitor the security of its networks, allowing unauthorized access to Plaintiffs' and the proposed Class members' personal and financial information, and failing to recognize in a timely manner that Plaintiffs' and proposed Class members' personal and financial information had been compromised.

- Paytime's failure to comply with widespread industry standards relating to data security, as well as the delay between the date of the intrusion and the date Plaintiffs and proposed Class members were informed of the Data Breach further evidence Paytime's negligence in failing to exercise reasonable care in safeguarding and protecting Plaintiffs' and the proposed Class members' personal and financial information in its possession or control.

- But for Paytime's wrongful and negligent breach of its duties owed to Plaintiffs and the proposed Class members, the Data Breach would not have occurred and Plaintiffs' and the proposed Class members' personal and financial information would not have been compromised.

- The injury and harm suffered by Plaintiffs and the proposed Class members was the reasonably foreseeable result of Paytime's failure to exercise reasonable care in safeguarding and protecting Plaintiffs' and the proposed Class members' personal and financial information in its possession or control. Paytime knew or should have known that its systems and technologies for processing and securing Plaintiffs' and proposed Class members' personal and financial information had security vulnerabilities.

- Plaintiffs are part of a well-defined foreseeable class. Paytime's liability is restricted to a finite and discernable class who were well-known and identifiable to Paytime before its conduct caused the harm at issue. Members of the class are persons whose employers and/or former employers utilized Paytime as their payroll processing service, meaning

4

that the persons comprising the class, their numbers, and their potential to be harmed by Paytime's negligent conduct all were predictable and reasonably foreseeable.

- The nature of the harm was also foreseeable. Paytime was aware, or should have been aware, that the personal and confidential information provided by Plaintiffs and class members was frequently the target of data breach crimes because that information was utilized to engage in identity theft. Being aware of both the potential for attempted theft and the discernible class of persons who entrusted Paytime with their valuable personal information, Paytime had a duty to ensure that it protected that information.

- Paytime's negligent handling of Plaintiffs' sensitive information was the direct and proximate cause of their foreseeable economic harm. Upon acquisition, Paytime had sole control over the data and Plaintiffs had no ability to protect their information. Consequently, Paytime was in the best and only position to safeguard the information. Paytime failed in this regard and negligently allowed third party hackers to access its servers and steal Plaintiffs' information. Thus, Paytime's negligence directly made available Plaintiffs' information and therefore was a direct cause of Plaintiffs' harm.

- As a result of Paytime's negligence, Plaintiffs and the proposed Class members have suffered actual damages including but not limited to expenses for credit monitoring, lost work time, anxiety, emotional distress, loss of privacy, and other economic and non-economic harm.

- As a result of Paytime's negligence, Plaintiffs and the proposed Class members are at an increased and imminent risk of becoming victims of identity theft crimes, fraud and abuse.

Am. Compl. ¶¶ 42-52.

Concerning their claim for breach of contract, Plaintiffs, in their Amended Complaint, specifically allege:

- Paytime came into possession of Plaintiffs' and the proposed Class members' personal and financial information for the purposes of

5

processing payroll and providing human resources management services. Paytime contracted with the former and current employers of Plaintiffs and the proposed Class members to protect such information.

- Upon information and belief, the contract between Paytime and the former and current employers of Plaintiffs and the proposed Class members required Paytime to safeguard and protect Plaintiffs' and the proposed Class members' personal and financial information from being compromised and/or stolen.

- Plaintiffs and the proposed Class members were either direct or third-party beneficiaries of the contract between Paytime and their former or current employers, and Paytime had a duty of care to them.

- Paytime did not safeguard or protect Plaintiffs' and the proposed Class members' personal and financial information from being accessed, compromised, and/or stolen. Paytime did not maintain sufficient security measures and procedures to prevent unauthorized access to Plaintiffs' and the proposed Class members' personal and financial information.

- Because Paytime failed to safeguard and/or protect Plaintiffs' and the proposed Class members' personal and financial information from being compromised or stolen, Paytime breached its contracts with Plaintiffs and the proposed Class members.

- Plaintiffs and the proposed Class members have suffered and will continue to suffer damages as the result of Paytime's breach.

Am. Compl. ¶¶ 54-59.

## B.    PROCEDURAL HISTORY

Plaintiffs initiated the above-captioned litigation against Paytime on June 13, 2014 by filing a Class Action Complaint in this Court.  *See* Dkt. No. 1.  Paytime filed a Motion to Dismiss Plaintiffs' Complaint on August 1, 2014.  *See* Dkt. No. 12.  In response to Paytime's Motion to Dismiss, Plaintiffs filed their Amended Complaint on August 8, 2014.  *See* Dkt. No. 17.  Paytime submitted a renewed Motion to Dismiss on August 27, 2014, arguing that the Amended Complaint should be dismissed on the grounds that Plaintiffs lack standing to pursue their claims, and on the basis that Plaintiffs' causes of action for negligence and breach of contract fail as a matter of law.  *See* Dkt. No. 28.  For the reasons discussed herein, each of Paytime's arguments is without merit.  Plaintiffs therefore respectfully suggest that Paytime's Motion to Dismiss the Amended Complaint should be denied in its entirety.

## II.    <u>ARGUMENT</u>

### A.    PLAINTIFFS HAVE STANDING TO BRING THEIR AMENDED COMPLAINT

Having irretrievably lost Plaintiffs personal financial data, exposing each member of the class to the real and imminent threat of identity theft and worse, Defendant first argues that Plaintiffs (and the Class) have no legal standing to bring a claim.  This argument is contrary to both common sense and the holdings the majority of courts that have considered the issue in this context.  As explained

7

below in greater detail, Plaintiffs' Amended Complaint is sufficiently pleaded so as to establish Plaintiffs' standing to sue, under the precedents of the United States Supreme Court, the Third Circuit Court of Appeals, and persuasive decisions issued under substantially similar circumstances in other circuits.

### 1.    The Rule 12(b)(1) Standard Of Review

When evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of standing, the district court must decide "whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Storino v. Borough of Point Pleasant Beach*, 322 F.3d 293, 296 (3d Cir. 2003) (citing *Warth v. Seldin*, 422 U.S. 490, 501 (1975)).  The litigant is so entitled if he has an actual "case or controversy" under Article III of the U.S. Constitution, referred to as "standing."  *See Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014).  Standing is the key that "open[s] the door to the federal courthouse."  *Chevalier v. Baird Sav. Ass'n*, 66 F.R.D. 105, 109 (E.D. Pa. 1975). However, "[t]he difference between an abstract question and a 'case or controversy' is one of degree . . . and is not discernible by any precise test." *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 297 (1979).  "The basic inquiry is whether the conflicting contentions of the parties present a real, substantial controversy between parties having adverse legal interests, a dispute

definite and concrete, not hypothetical or abstract." *Id.* at 298 (internal citations and quotation marks omitted).

In deciding the standing question, the court "must accept as true all material allegations set forth in the complaint, and must construe those facts in favor of the complaining party." *Storino*, 322 F.3d at 296. The court "may examine facts outside the pleadings . . . '[b]ecause at issue in a [Rule] 12(b)(1) motion is the trial court's jurisdiction – its very power to hear the case.'" *Robinson v. Dalton*, 107 F.3d 1018, 1021 (3d Cir. 1997).

### 2.    Plaintiffs' Amended Complaint Satisfies The Requirements For Article III Standing

As the Third Circuit has explained, a plaintiff has Article III standing under the U.S. Constitution if he shows: (1) that he has suffered an "injury in fact," meaning an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) there is a causal connection between the injury and the complained-of conduct, meaning that the injury is "fairly traceable" to the defendant's actions; and (3) it is likely that the injury will be redressed by a favorable decision. *NCAA v. Gov. of N.J.*, 730 F.3d 208, 218 (3d Cir. 2013) (citing *Summers v. Earth Island Inst.*, 555 U.S.

488, 493 (2009)).  Contrary to Paytime's argument, Plaintiffs have suffered an injury-in-fact sufficient to sustain their action.[2]

Although the plaintiff bears the burden of establishing the standing elements, each element can be supported "in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2342 (2014) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).  For this reason, "'general factual allegations of injury resulting from the defendant's conduct may suffice'" at the initial pleading stage of the litigation.  *Lozano v. City of Hazleton*, 496 F. Supp. 2d 477, 488 (M.D. Pa. 2007) (citing *Lujan*, 504 U.S. at 561); *see also Hildebrand v. Dentsply Intern., Inc.*, 264 F.R.D. 192, 196 (2010) (same) (citing *Ballentine v. U.S.*, 486 F.3d 806, 806 (3d Cir. 2007).  As Justice Alito recognized while a judge on the Third Circuit, "[i]njury-in-fact is not Mount Everest." *Danvers Motor Co. v. Ford Motor Co.*, 432 F.3d 286, 294 (3d Cir. 2005).

The contours of the injury-in-fact requirement are "very generous," *Bowman v. Wilson*, 672 F.2d 1145, 1151 (3d Cir. 1982), and even an "identifiable trifle" of injury will do.  *NCAA*, 730 F.3d at 219.  The court's "threshold inquiry into

---

[2] Paytime attacks Plaintiffs' Amended Complaint under only the first element of the standing test, not the causation or redressibility elements, effectively conceding that if Plaintiffs have suffered an injury-in-fact, then they have standing.  *See* Def. Mem. [Dkt. No. 29] at 5-11.

standing 'in no way depends on the merits of the [plaintiff's] contention that particular conduct is illegal.'" *Whitmore v. Ark.*, 495 U.S. 149, 155 (1990) (quoting *Warth*, 422 U.S. at 500). The injury requirement "is not applied too restrictively. If plaintiff can show that there is a possibility that defendant's conduct may have a future effect, even if injury has not yet occurred, the court may hold that standing has been satisfied." Charles A. Wright & Arthur R. Miller, Mary Kay Kane, 7AA *Fed. Prac. & Proc. Civ.2d* § 1785.1 (2004) (explaining injury-in-fact requirement in context of class action).

### a.   Literal Certainty Of Harm Is *Not* Required To Establish Injury-In-Fact

The question presented by Paytime's motion to dismiss is whether the current and immediate availability of Plaintiffs' personal and financial data on the world wide black market constitutes an injury-in-fact because Plaintiffs' future harm of identity theft-related fraud is sufficiently imminent.[3] The starting point in answering this question is the Supreme Court's jurisprudence, which Paytime misreads. Specifically, Paytime misconstrues *Clapper v. Amnesty Int'l*, 133 S. Ct. 1138 (2013), upon which it relies heavily. In *Clapper*, the Supreme Court granted the federal government's motion for summary judgment in a lawsuit by a group of attorneys and human rights, labor, legal, and media organizations aimed at

---

[3] Plaintiffs' also have standing because the loss of the confidentiality of such information is a discernable harm in and of itself. *See* Section B part 2, *infra*.

invalidating a section of the Foreign Intelligence Surveillance Act ("FISA"). *Id.* at

1145. The plaintiffs asserted that the statute had given rise to, or would give rise

to, government surveillance of their telephone and e-mail communications with

colleagues, clients, sources, and others located abroad. *Id.* at 1145–46. The

Second Circuit held that the plaintiffs had standing. *Id.* at 1146.

In its 5-to-4 decision on the government's appeal, the Supreme Court

reversed, rejecting both of plaintiff-respondents' standing theories. First, the Court

explained that respondents' argument that their harm was sufficiently imminent

depended on a "highly attenuated chain of possibilities," which fell short of the

requirement "that 'threatened injury must be certainly impending to constitute

injury in fact.'" *Id.* at 1147-48 (quoting *Whitmore*, 495 U.S. at 158). As the Court

reasoned, in order for respondents to be injured, the government would have to

single out the respondents' overseas targets, do so under the terms of the FISA

statute, obtain the FISA court's approval for surveillance, successfully intercept the

communications, and happen to sweep up communications in which respondents

were involved. *Id.* at 1148. Because each step in this chain turned on

"speculation," the surveillance could not be considered "certainly impending," the

Court stated. *Id.* at 1147-50. Secondly, the Court concluded that respondents

could not establish standing by incurring costs to protect themselves against what the majority called "non-imminent harm."  *Id.* at 1155.[4]

Importantly, although the *Clapper* majority opinion emphasized the "certainly impending" standard, it also acknowledged an arguably different, more lenient standard by which the Supreme Court had previously judged standing, observing that

> [o]ur cases do not uniformly require plaintiffs to demonstrate that it is literally certain that the harms they identify will come about.  In some instances, we have found standing based on a "substantial risk" that the harm will occur, which may prompt plaintiffs to reasonably incur costs to mitigate or avoid that harm.   But to the extent that the "substantial risk" standard is relevant and is distinct from the "clearly impending" requirement, respondents fall short of even that standard, in light of the attenuated chain of inferences necessary to find harm here.

_____

[4] Courts have described the imminence requirement in divergent ways – some treating imminence as a question of probability, others as a question of timing. *Compare Chamber of Commerce of the U.S. v. EPA*, 642 F.3d 192, 200 (D.C. Cir. 2011) (plaintiff must show a "substantial probability of injury"), and *Thomas More Law Ctr. v. Obama*, 651 F.3d 529, 536 (6th Cir. 2011) ("imminence is a function of probability"), *with Reilly v. Ceridian Corp.*, 664 F.3d 38 (3d Cir. 2011) (prospect of future misuse of plaintiffs' data was "only speculative – not imminent").  Either way, Plaintiffs here have pleaded an injury-in-fact, as misuse of their data is both probable ***and*** likely to manifest in the very near future.  *See* First Am. Compl. [Dkt. No. 17] at ¶ 23 (asserting, based on study, that nearly one in four data-breach victims becomes an identity-fraud victim); *see also* Jennifer Bjorhus, *After Home Depot breach, rogue website hawking Minn. card data*, Star Tribune (Minneapolis), Sept. 12, 2014 (reporting that at least 12,000 credit and debit cards believed stolen from Home Depot and linked to Minnesota ZIP codes were for sale at the underground crime shop Rescator).

*Id.* at 1150 n.5 (internal citations omitted); *see also, e.g.*, *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 153–54 (2010) (finding that a "substantial risk of gene flow" from genetically engineered alfalfa crops to non-genetically engineered alfalfa crops was sufficient to confer standing).

Since *Clapper*, many lower courts have employed the "substantial risk" test alongside, or instead of, the "certainly impending" test.  *See, e.g.*, *Hedges v. Obama*, 724 F.3d 170, 196 (2nd Cir. 2013) (noting *Clapper*'s alternate "substantial risk" standard); *Organic Seed Growers & Trade Ass'n v. Monsanto Co.*, 718 F.3d 1350, 1355 (Fed. Cir. 2013) (applying the "substantial risk" standard).[5]

Here, as explained in greater detail below, the current and immediate availability of Plaintiffs' personal and financial data on the world wide black market meets both the "certainly impending" and "substantial risk" tests.[6]

---

[5] *See also, In re Adobe Sys., Inc. Privacy Litig.*, ___ F. Supp. 2d ___, 2014 WL 4379916, at \*7-10 & n.7 (N.D. Cal. Sept. 4, 2014) (finding that plaintiffs met both the "certainly impending" and "substantial risk" standards); *Danisco U.S. Inc. v. Novozymes A/S*, 744 F.3d 1325, 1330 (Fed. Cir. 2014) (framing the standing question as "whether Danisco has demonstrated a 'substantial risk' that the harm [to its patent] will occur"); *Chevron Corp. v. Donziger*, 974 F. Supp. 2d 362, 554 & n.1257 (S.D.N.Y. 2014) (finding standing based on a "substantial risk that the harm Chevron apprehends will come to pass and, should that occur, it would have come to pass as a direct result of defendants' actions").

[6] Paytime argues that *Clapper* "imposed a tighter 'imminence' requirement."  Def. Mem. at 9.  But as at least two courts have explained this year, one of them just weeks ago, *Clapper* did not "tighten" the injury-in-fact standard.  *See In re Adobe Sys., Inc. Privacy Litig.*, No. 13-CV-05226-LHK, 2014 WL 4379916, at \*7 (concluding that "*Clapper* did not change the law governing Article III standing"); *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, MDL

### b.   Numerous Courts Have Found Standing In Data-Breach Cases

The Seventh and Ninth circuits, and numerous district courts, have

concluded that plaintiffs have standing to sue when their data is stolen and

therefore available to be used for fraudulent purposes, regardless of whether such

fraud has yet occurred.  *See Krottner v. Starbucks Corp.*, 628 F.3d 1139, 1143 (9th

Cir. 2010) (finding Article III standing based on a "credible threat of harm" that

was "both real and immediate, not conjectural or hypothetical"); *Pisciotta v. Old*

*Nat'l Bancorp*, 499 F.3d 629, 634 (7th Cir. 2007) (finding Article III standing for

victims of data breach that defendant conceded was "intentional and malicious,"

citing decisions involving toxic substances, medical monitoring, and

environmental claims by the Second, Fourth, Sixth, and Ninth circuits); *In re*

11MD2258 AJB MDD, 2014 WL 223677, at *8–9 (S.D. Cal. Jan. 21, 2014) ("*Sony II*") (concluding that "the Supreme Court's decision in *Clapper* did not set forth a new Article III framework, nor did the Supreme Court's decision overrule previous precedent"); *see also Moyer v. Michaels Stores, Inc.*, No. 14 C 561, 2014 WL 3511500, at *6 (N.D. Ill. July 14, 2014) (reasoning that "*Clapper* is distinguishable based on its admittedly rigorous application of the 'certainly impending' standard in a case that involved (1) national security and constitutional issues and (2) no evidence that the relevant risk of harm had ever materialized in similar circumstances"); *Cherri v. Mueller*, No. 12-11656, 2013 WL 2558207, at *9 (E.D. Mich. June 11, 2013) (explaining that after *Clapper*, a plaintiff need only allege a "certainly impending injury that is fairly traceable to" the defendant's purported conduct to withstand a motion to dismiss)).  In short, *Clapper* – which involved a motion for summary judgment, not a motion to dismiss – did ***not*** alter standing law at the initial pleading stage; to the contrary, it confirmed that plaintiffs have at least two ways to demonstrate an injury-in-fact sufficient to establish standing: the "certainly impending" standard, and the "substantial risk" standard. 133 S. Ct. at 1150 n.5.  Plaintiffs here meet both of these standards.

*Adobe,* 2014 WL 4379916, at *8 (finding that unlike in *Clapper*, "the risk that Plaintiffs' personal data will be misused by the hackers who breached Adobe's network is immediate and very real"); *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.,* 996. F. Supp. 2d 942, 962 (S.D. Cal. 2014) (*"Sony II"*) (finding that consumers whose personal information was stolen from defendant's computer networks, putting them at increased risk for future identity theft, had standing in their class action against manufacturer, even if they had not yet suffered any actual harm).[7]

---

[7] *See also, Moyer v. Michaels Stores, Inc.*, No. 14-561, 2014 WL 3511500, at *5 (N.D. Ill. July 14, 2014) (finding that "Plaintiffs have presented evidence that they face a credible, non-speculative risk of future harm," and that "the chain of causation connecting a data security breach and identity theft is not so attenuated that is makes the latter risk speculative or hypothetical"); *Holmes v. Countrywide Fin. Corp.*, No. 08-00205, 2012 WL 2873892, at *4-5 (W.D. Ky. July 12, 2012) (following *Pisciotta* and *Krottner* in finding that plaintiffs' injuries satisfied Article III's "requirement of an 'actual and imminent injury'"); *McLoughlin v. People's United Bank, Inc.*, No. 08-944, 2009 WL 2843269, at *1, 4 (D. Conn. Aug. 31, 2009) (plaintiff, who claimed that unencrypted back-up tapes containing her personal information were lost or stolen, but did not demonstrate identity theft or misuse, had standing); *Ruiz v. Gap Inc.*, 622 F. Supp. 2d 908, 910, 912–13 (N.D. Cal. 2009) (plaintiff, who alleged that laptops containing his personal information were stolen, but did not demonstrate identity theft or misuse, had standing); *Caudle v. Towers, Perrin, Forster & Crosby, Inc.*, 580 F. Supp. 2d 273, 275, 280 (S.D.N.Y. 2008) (plaintiff, who alleged that a laptop containing his personal information was stolen but did not allege misuse, had standing); *Am. Fed'n of Gov't Employees v. Hawley*, 543 F. Supp. 2d 44, 45-46, 50-51 (D.D.C. 2008) (plaintiff, who alleged that a hard drive containing personal information was lost but did not allege misuse, had standing); *see also Brittingham v. Cerasimo, Inc.*, No. 08-216, 2009 WL 1010427 (N.D. Ind. Apr. 14, 2009) (holding that increased risk of future harm satisfies standing); *Witriol v. LexisNexis Group*, No. 05-2392, 2006 WL 4725713, at *6 (N.D. Cal. Feb. 10, 2006) (holding that costs associated

In *Adobe*, the most recent data-breach standing decision, the district court found that the threatened harm to consumers was "sufficiently concrete and imminent to satisfy *Clapper*," where hackers spent several weeks inside Adobe's network without detection, including the databases containing customers' personal information. *Adobe*, 2014 WL 4379916, at *2, 8.   Indeed, the district court, in concluding that plaintiffs' harm was "certainly impending," observed that such harm is the data thieves' whole point: "[A]fter all, ***why would hackers target and steal personal customer data if not to misuse it?***" *Id.* at 8-9 (emphasis added).[8]

Likewise in *Sony II*, where a nationwide class sued over the theft of consumers' personal and financial data, the court found that neither *Clapper* nor *Krotter* required the plaintiffs to allege that their personal information "was actually accessed by a third party," much less used to effect identity theft; it was enough at the pleading stage that they "plausibly alleged a 'credible threat' of

---

with monitoring and repairing credit impaired by the unauthorized release of private information were sufficient for allegation of actual injury and monetary loss); *Arcilla v. Adidas Promotional Retail Operations, Inc.*, 488 F. Supp. 2d 965, 972 (C.D. Cal 2007) (holding that under the Fair Credit Reporting Act, 15 U.S.C. § 1681c, plaintiffs suffered "actual harm" when "subjected to an increased risk of identity theft").

[8] The district court in *Adobe* stressed that making plaintiffs wait until they actually suffer identity theft to have standing would run counter to the principle that harm need not be "literally certain" to constitute injury-in-fact). *Id.* at *8 (citing *Clapper*, 133 S. Ct. at 1150 n.5); *see also Anderson v. Hannaford Bros. Co.*, 659 F. 3d 151, 164 (1st Cir. 2011) (noting that there is no way in a data-breach case "to predict whose accounts will be used to ring up improper charges").

impending harm based on the disclosure of their Personal Information following the intrusion." *Sony II*, 996 F. Supp. 2d at 962-63 (citing *Cherri v. Mueller*, No. 12-11656, 2013 WL 2558207, at *9 (E.D. Mich. June 11, 2013) (stating that after *Clapper*, a plaintiff need only allege a "certainly impending injury that is fairly traceable to" the defendant's purported conduct to withstand a motion to dismiss)). To that end, the *Sony II* court held that plaintiffs' allegations "that their personal information was collected by Sony and then wrongfully disclosed as a result of the intrusion [was] sufficient to establish Article III standing at this stage in the proceedings."

The same is true here.  Plaintiffs' Amended Complaint asserts that their personal and financial information (and that of proposed Class members) was stolen from Paytime's computer system, affecting 233,000 people in all.  *See* Am. Compl. ¶¶ 1, 2, 16, 20, 42, 57, 58.  Further, the Amended Complaint asserts that one in four data-breach letter recipients becomes a victim of identity fraud, with breaches involving Social Security numbers – among the categories of information stolen from Paytime – being the most damaging.  *Id.* ¶ 23.  The Amended Complaint asserts that Plaintiffs and the proposed class members are therefore at an increased and imminent risk of becoming victims of identity theft.  *Id.*  ¶ 27. Paytime itself has said that the breach was caused by skilled foreign hackers.  *See, e.g.,* Paytime's May 21, 2014 North Carolina Security Breach Reporting Form (a

true and correct copy of which is attached hereto as "**Exhibit A**") and Paytime's

May 20, 2014 Notice of Data Event to the Office of the New Hampshire Attorney

General (a true and correct copy of which is attached hereto as "**Exhibit B**").  As

in *Adobe*, the hackers had access to the computer system for weeks before they

were detected.  Am. Compl. ¶ 17.

Consistent with the reasoning in *Adobe* and *Sony*, Plaintiffs have "plausibly

alleged a 'credible threat' of impending harm" based on the theft and current

public availability on the world wide black market of their personal and financial

information.

### c.    *Reilly* Is Distinguishable

The Third Circuit's decision in *Reilly v. Ceridian Corp.*, 664 F.3d 38 (3d

Cir. 2011), on which Paytime leans heavily, is distinguishable from this case.  In

*Reilly*, a Minnesota-based payroll processing firm suffered a security breach,

exposing the personal and financial information of 27,000 employees.  *Id.* at 40.

One month after the data breach, the defendant, Ceridian, notified its customers'

employees that some of their personal information "may have been illegally

accessed by an unauthorized hacker . . . *[T]he information accessed* included your

first name, last name, social security number and, in several cases, birth date and/or

the bank account that is used for direct deposit."  *Id.* (emphasis added).

The *Reilly* panel, concluding that plaintiffs did not have standing to sue, distinguished  the decisions of the Ninth Circuit and Seventh Circuit on their facts, reasoning that in *Pisciotta* and *Krottner*, "the threatened harms were significantly more 'imminent' and 'certainly impending' than the alleged harm here." *Id.* at 44. Unlike in *Pisciotta*, where there was evidence that "the [hacker's] intrusion was sophisticated, intentional and malicious," in *Reilly* "there [was] no evidence that the intrusion was intentional or malicious," and "no identifiable taking occurred; all that is known is that a firewall was penetrated." *Id.*  Therefore, the *Reilly* panel held, the prospect of future misuse of plaintiffs' data was "only speculative – not imminent" and therefore plaintiffs did not have standing.

Plaintiffs' allegations here are more like those of the plaintiffs in *Pisciotta* and *Krottner* than those in *Reilly*.  Unlike in *Reilly*, where plaintiffs pleaded only that their information had been "compromised, *i.e.*, there was a break-in but no apparent theft of data,"[9] Plaintiffs here assert in the Amended Complaint that their personal and financial information was:

- "*stolen*" from Paytime's computer system, Am. Compl. ¶ 1;

- "*obtained* by unknown third parties," *id.* ¶ 2;

- "*accessed* without the authorization" of Plaintiffs and the proposed class, *id.* ¶ 16;

---

[9] *See* Compl. [Dkt. No.. 1], *Reilly v. Ceridian Corp.*, Case No. 2:10-cv-05142, at ¶¶ 14-15 (D. N.J. Oct. 7, 2010) (asserting that plaintiffs' information had been "compromised" or "potential[ly] compromise[d]").

- "*misappropriated* as a result of the breach," *id.* ¶ 20;

- "lost, stolen, misused, and/or disclosed," *id.* ¶ 42;

- "accessed, compromised, and/or *stolen*," *id.* ¶ 57; and

- "compromised or *stolen*," *id.* ¶ 58 (emphasis added.)

In short, the Amended Complaint details how the intrusion into Paytime's system was "intentional [and] malicious," and that an "identifiable taking occurred." *See Reilly*, 664 F.3d at 44. Moreover, Paytime itself has confirmed, in data-breach notices to officials in at least two states, that the intrusion was the work of "skilled hackers working from foreign IP addresses." *See* Exhibits A, B.[10] Thus, the allegations in the complaint—which must be taken as true—detail how the data breach was "intentional [and] malicious," and that an "identifiable taking occurred.".

### d.   Paytime's Other Cited Authority Is Inapposite Or Distinguishable

Besides *Clapper* and *Reilly*, the remaining cases Paytime cites – all district court decisions – are distinguishable. *In re Sci. Applications Int'l Corp. Backup*

---

[10] Under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Evidence, the Court may consider these data-breach notices in deciding Paytime's motion to dismiss. *See Robinson v. Dalton*, 107 F.3d 1018, 1021 (3d Cir. 1997) (court "may examine facts outside the pleadings" in deciding Rule 12(b)(1) motion); *Southern Cross Overseas Agencies v. Wah Kwong Shipping Grp.*, 181 F.3d 410, 426 (1999) ("To resolve a 12(b)(6) motion, a court may properly look at public records . . . in addition to the allegations in the complaint").

*Tape Data Theft Litig.* ("*SAIC*"), ___ F. Supp. 2d ___, 2014 WL 1858458 (D.D.C.

May 9, 2014), the first of several cases cited by Paytime, is typical.  In *SAIC*, a

thief broke into a car in San Antonio, Texas and stole the car's GPS and stereo, as

well as encrypted backup data tapes containing personal medical information for

more than four million U.S. military members and their families.  2014 WL

1858458, at *2.  As the *SAIC* court found, the thief would need to have recognized

the data tapes for what they were, obtained special equipment to read them,

cracked the data's encryption, and then obtained specialized software to read the

data, all before being in any position to misuse the data.  *Id.* at *6.  Such a chain of

possibilities, the court found, was as attenuated as the chain the Supreme Court

rejected in *Clapper*, especially given the more likely possibility that the thief

simply sold the GPS and stereo and discarded the data tapes "in a landfill

somewhere in Texas."  *Id.*  The facts of *SAIC* contrast sharply to those the

Plaintiffs allege here, where hackers invaded Paytime's system for the clear

purpose of obtaining the Plaintiffs' personal and financial data, and had access to it

for weeks.

       In two other cases cited by Paytime, it was unclear whether the plaintiffs'

information had been taken at all.  *See Strautins v. Trustwave Holdings, Inc.*, ___

F. Supp. 2d ___, 2014 WL 960816, at *6–7 (N.D. Ill. Mar. 12, 2014) (data breach

"did *not* result in the compromise of data of all taxpayers filing South Carolina

returns since 1998"); *In re Barnes & Noble Pin Pad Litig.*, No. 12–8617, 2013 WL 4759588, at *4 (N.D. Ill. Sep. 3, 2013) ("there is no actual injury pled because there are no facts to support the allegations that the information was disclosed").[11]

Because Plaintiffs have asserted that their data was accessed and stolen in an intentional, malicious scheme, which Paytime has said was the work of skilled intruders working from abroad, Plaintiffs have met the *Clapper*'s requirement to plead an injury-in-fact, under both the "certainly impending" and "substantial risk" tests.

## B.   PLAINTIFFS' AMENDED COMPLAINT STATES A COGNIZABLE NEGLIGENCE CLAIM

### 1.   The Rule 12(b)(6) Standard of Review

It is well-settled that in reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "[t]he applicable standard of review requires the court to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party." *Rocks v. City of Philadelphia*, 868 F.2d 644, 645 (3d Cir. 1989).  Under the Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561,

---

[11] Paytime also cites *Galaria v. Nationwide Mut. Ins. Co.*, where the court reasoned that plaintiffs' alleged injuries from a data breach were speculative because, among other things, the hackers might "do nothing" with the data.  998 F. Supp. 2d 646 (S.D. Ohio 2014).   As the court in *Adobe* pointed out, the reasoning in *Galaria* is flawed.  *See* 2014 WL 4379916 at *9.  It certainly makes little sense in the context of the breach here, which Paytime itself has attributed to skilled foreign hackers, who are unlikely to "do nothing" with the data.

127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), dismissal of a complaint pursuant to Rule

12(b)(6) is proper only where the averments of the complaint plausibly fail to raise

directly or inferentially the material elements necessary to obtain relief under a

viable legal theory of recovery.  *Id.* at 544.  In other words, the allegations of the

complaint must be grounded in enough of a factual basis to move the claim from

the realm of mere possibility to one that shows entitlement by presenting "a claim

to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct.

1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570).

Importantly, a plaintiff is *not* required to prove "probability" at the pleading

stage.  *Iqbal*, 129 S.Ct. at 1949 ("The plausibility standard is not akin to a

'probability requirement,' but it asks for more than a sheer possibility that a

defendant has acted unlawfully"); *Phillips v. County of Allegheny*, 515 F.3d 224,

235 (3d Cir. 2008) (same).  Instead, "[t]he Supreme Court's Twombly formulation

of the pleading standard can be summed up thus: 'stating ... a claim requires a

complaint with enough factual matter (taken as true) to suggest the required

element ... [and provides] enough facts to raise a reasonable expectation that

discovery will reveal evidence of the necessary element.'" *Phillips*, 515 F.3d at

235; *see also Wilkerson v. New Media Technology Charter School Inc.*, 522 F.3d

315, 321 (3d Cir. 2008) ("The complaint must state 'enough facts to raise a

reasonable expectation that discovery will reveal evidence of the necessary

24

element'") (quoting *Phillips*, 515 F.3d at 235) (citations omitted). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 563.

### 2.   Plaintiffs Have Sufficiently Alleged Actual Injury Pursuant To The Theft Of Their Confidential Information

Contrary to Paytime's arguments, Plaintiffs here have indeed alleged present, actual injury.  The Pennsylvania courts have routinely found that individuals have protected privacy interests in their personal and financial information. *See, e.g., Sapp Roofing Co. v. Sheet Metal Workers' International Assoc.*, 552 Pa. 105, 713 A.2d 627, 630 (1998) (noting the "strong privacy interest" in employees' personal information, including names, addresses, Social Security numbers, and telephone numbers); *Telecomm. Network Design v. Brethren Mut. Ins. Co.*, 5 A.3d 331, 339 (Pa. Super. 2010) (discussing definitions from Black's Law Dictionary, and noting that "[t]hese definitions confirm that "right of privacy" connotes … an interest in the secrecy of personal information").  Thus, the loss of and misuse of one's confidential personal and financial information is sufficient harm to one's person and privacy to support a cause of action for negligence.

Stated differently, Plaintiffs and Class members have a possessory interest in their personal information and an interest in it remaining private because that information, including incredibly private information such as Social Security numbers, has substantial value not only to Plaintiffs and Class members, but also to

25

the criminals who traffic in such information.  Because of the intrinsic value of the stolen information itself, Plaintiffs have alleged an immediate and present injury to their privacy and possessory interest sufficient to support their negligence claim.

Moreover, it is important to note that injury and damages do not always occur simultaneously.  Although some Plaintiffs and Class members have not yet suffered actual identity theft, it is irrelevant that they might suffer *additional* injuries in the future because they have *actual present injury*, in the form of a lost privacy interest, as well as increased risk, *now*.  Plaintiffs' allegations thus establish a presently compensable injury that supports a viable cause of action sounding in negligence.

### 3.   The Amended Complaint Adequately Alleges Proximate Causation

The allegations of the Amended Complaint sufficiently allege that Paytime's conduct directly caused Plaintiffs' harm.  A defendant's conduct is the proximate cause of a plaintiff's injury when "the injury would have been foreseen by an ordinary person as the natural and probable outcome of the act complained of." *Eckroth v. Pennsylvania Elec., Inc.*, 12 A.3d 422, 428 (Pa. Super. 2010) (quoting *Holt v. Navarro*, 932 A.2d 915, 921 (Pa. Super. 2007)).

Paytime does not attempt to refute that the theft of Plaintiffs' personal and financial information was proximately caused by its negligent and inadequate security policies and practices.  If the allegations of the Amended Complaint are

taken as true, as they must be at this procedural juncture, there is no question that Plaintiffs have alleged a plausible connection between their harm and the conduct of Paytime. It is the allegation that Paytime mishandled the security of its computer system which exposed Plaintiffs to impending harm of fraud.

### 4. The Economic Loss Doctrine Is Not Applicable Because Plaintiffs Constitute A Well-Defined Foreseeable Class And Paytime's Liability Is Proportional To Fault And Capable Of Being Limited To Foreseeable Damages

The economic loss doctrine generally precludes recovery in negligence actions for pure economic injury. *Excavation Technologies, Inc. v. Columbia Gas Co. of Pennsylvania*, 985 A.2d 840, 841 (Pa. 2009). However, the doctrine does *not* operate as an absolute ban. *Bilt-Rite Contractors, Inc. v. Architectural Studio*, 866 A.2d 270, 288 (Pa. 2005) ("Pennsylvania has long recognized that purely economic losses are recoverable in a variety of tort actions."). Instead, it functions as a dividing line between contract and tort law, *New York State Elec. & Gas Corp. v. Westinghouse Elec. Corp.*, 564 A.2d 919, 925-26 (Pa. Super. 1989), and as a shield against disproportionate, indeterminate and/or unforeseeable liability. *Aikens v. Baltimore and Ohio R. Co.*, 501 A.2d 277, 279 (Pa. Super. 1985). Accordingly, the economic loss rule is not applicable in cases where the parties: (1) have not and likely would not privately allocate risk; and (2) have a special relationship such that: (a) the harm suffered is reasonably foreseeable; and (b) a defendant's liability is limited to a well-defined plaintiff class whose injury was a direct proximate

27

cause of defendant's negligence. *Bilt-Rite*, 866 A.2d at 286-87; *see also Aikens*, 501 A.2d at 278; *Adams v. Copper Beach Townhome Communities*, 816 A.2d 301, 307 (Pa. Super 2003); *Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162, 175-76 (3d Cir. 2008).

In *Bilt-Rite*, the defendant, an architectural company, contracted with a school district to provide plans, drawings and specifications to be submitted to contractors for the purpose of preparing bids for the construction of a school. *Bilt-Rite*, 866 A.2d at 272. Relying on the defendant's plans, the plaintiff, a general contractor, submitted a bid for construction and was awarded the general contract. *Id.* After construction began, the plaintiff discovered that special construction methods, instead of the general construction methods outlined in the defendant's plan, were required to complete the project, resulting in increased costs. *Id.* The plaintiff sued on a theory of negligent misrepresentation seeking recovery for economic harm. *Id.* at 272-73.

The Pennsylvania Supreme Court held the defendant liable despite the economic loss doctrine. In doing so, the Court found that the plaintiff and the defendant shared a special relationship sufficient to impose liability because the defendant was liable only to a well-defined "class of potential plaintiffs" and only was exposed to damages that were foreseeable and in proportion to fault.  *Id.* at 285-86.

The logic of *Bilt-Rite* applies with equal force here.  First, the parties did not and would not privately allocate responsibility for a data breach. Plaintiffs are or were employed by entities that contracted with Paytime for payroll processing services. Am. Compl. ¶ 14. As a condition of their employment, Plaintiffs were required to divulge sensitive personal and financial information, including their Social Security numbers to their current and/or former employers. *Id.*  This information was then entrusted to Paytime for payroll processing and human resource purposes. *Id.* at ¶ 15. During the process of hiring and employment, Plaintiffs and class members had no opportunity to privately allocate risk of the loss with Paytime or their employers.

Second, Plaintiffs are part of a well-defined foreseeable class. Plaintiffs and members of the class are persons whose current and/or former employers utilized Paytime as their payroll processing service.  Am. Compl. ¶ 48. Accordingly, Paytime's liability in this matter is restricted to a finite and discernable class of individuals who are capable of suffering only certain damages and who were well-known and identifiable to Paytime before its conduct caused the harm at issue. *Bilt- Rite*, 866 A.2d at 286; *People Exp. Airlines, Inc. v. Consol. Rail Corp.*, 100 N.J. 246, 495 A.2d 107, 115-16 (1985).

Moreover, the nature of the harm was also foreseeable. Paytime was aware, or should have been aware, that its Plaintiffs' current and/or former employers

routinely provided it with information that was frequently the target of data breach crime because that information was utilized to engage in identity theft. Being aware of both the potential for attempted theft and the discernible class of persons who entrusted Paytime with their valuable personal information, Paytime had a duty to ensure that it protected that information.

Finally, Paytime's negligent handling of Plaintiffs' sensitive information was the direct and proximate cause of Plaintiffs' foreseeable economic harm. Upon acquisition, Paytime had sole control over the data and Plaintiffs had no ability, contractual or otherwise, to protect their information. Consequently, Paytime was in the best and only position to safeguard the information.  Paytime failed in this regard and negligently allowed third party hackers to access its servers, steal Plaintiffs' information and thereafter disseminate it to others. Thus, Paytime's negligence directly exposed Plaintiffs' information and therefore was a direct cause of Plaintiffs' harm.

Thus, because Plaintiffs were particularly known to Paytime by nature of the parties' business relationship, and because Plaintiffs' injuries were foreseeable and a direct and proximate result of Paytime's negligence, the reasoning in *Bilt-Rite* should be adopted in this context and recovery for economic loss should be allowed. When a defendant is faced with a lawsuit premised on such foreseeable losses to an identifiable class of plaintiffs, it should not be permitted to hide behind

the economic loss doctrine to shield itself from the consequences of its

negligence.[12]

### C.   THE AMENDED COMPLAINT SETS FORTH A VALID CLAIM FOR BREACH OF CONTRACT

#### 1.   Plaintiffs Have Sufficiently Alleged That They Are Third-Party Beneficiaries To The Contract Between Paytime And Their Current And Former Employers

A plaintiff may be a third-party beneficiary to a contract even if the

contracting parties do not express an intention to benefit the non-party plaintiff in

the contract itself. *Sovereign*, 533 F.3d, at 168; *Scarpitti v. Weborg*, 609 A.2d 147

(Pa. 1992); *Guy v. Liederbach*, 459 A.2d 744 (Pa. 1983); *See also* Restatement

(Second) of Contracts § 302(1)(b) (1979). A plaintiff not expressly named as a

beneficiary to a contract is not required to show compelling circumstances in order

to prove his beneficiary status. *Mylan, Inc. v. Zorich*, 2012 WL 527662, at *7

---

[12] Additionally, public policy strongly supports imposing a duty on Paytime in these circumstances. *See Althaus v. Cohen*, 756 A.2d 1166, 1168-69 (Pa. 2000) (explaining and setting forth the public policy considerations in determining the existence of a duty). Paytime is a national payroll processing and human resource management company, with well over 1,000 clients. Large companies, particularly those that handle and store sensitive personal and financial data and who thus are natural targets for data breaches, must be put on notice that they need to protect against the substantial harm deriving from the negligent handling of Plaintiffs' sensitive personal and financial information. Companies like Paytime, and not the individual employees who have no role in storing and securing their data once turned over as a condition of employment, are in the best position to prevent damages like those in this matter. As a result, imposing liability on Paytime will incentivize other companies similarly situated to act more reasonably to protect the information entrusted by Plaintiffs.

(W.D. Pa. Feb. 16, 2012). Rather, a non-party plaintiff need only show that 1) the recognition of his beneficiary status is appropriate to effectuate the intention of the parties and 2) the circumstances indicate that the promisee intended the non-party plaintiff to benefit from the promised performance. *Scarpitti*, 609 A.2d at 150-51.

In *Scarpitti*, an architect was retained by a residential subdivision developer to review and approve the house construction plans of lot purchasers. *Id.* at 148. Owners of lots in the residential subdivision sued the architect seeking damages for his alleged arbitrary enforcement of subdivision restrictions. *Id.* The owners argued they were intended beneficiaries of the implied contract between the architect and the developer. *Id.* at 149.  The court agreed with the owners and found they were third party beneficiaries.  *Id.* at 150-51.  In reaching its conclusion, the court first held that recognition of the owner's third party beneficiary status was appropriate to effectuate the intention of the parties because the owners' third party beneficiary relationship "was within the contemplation of the [architect] and the [developer] at the time of contracting." *Id.* at 151.  The court noted that it had "not been informed of any other purpose for the employment of [the architect] to review construction plans, but for the benefit of the homeowners in the subdivision." *Id.* "Thus, it [was] patently clear that the parties, by establishing a vehicle for the enforcement of deed restrictions, intended to benefit the homeowners who purchased lots in the [subdivision], at the time the contract was entered into." *Id.*

32

In the present matter, Plaintiffs' allegations, similar to the averments analyzed in *Scarpitti*, are sufficient to state a claim for breach of contract. Plaintiffs' have alleged that Paytime contracted with Plaintiffs' current and/or former employers to provide payroll processing and human resource services.  Am. Compl. ¶ 54.  Plaintiffs also have alleged that these contracts required Paytime to safeguard the personal and financial information of Plaintiffs. *Id.* ¶¶ 54-55.

The allegation of the existence of these contractual provisions is sufficient to raise a factual issue as to whether Paytime and Plaintiffs' current and/or former employers intended to benefit Plaintiffs through Paytime's performance.  The contracting parties had nothing to gain from protecting Plaintiffs' sensitive personal and financial information. Plaintiffs were the primary, if not the only, beneficiaries of Paytime's performance and Plaintiffs' employers thus contracted with Paytime for Plaintiffs' benefit.  Plaintiffs are part of the "limited class" of persons directly and primarily benefiting from Paytime's agreement with Plaintiffs' current and/or former employers, and, as such, they have stated a claim for breach of contract.

### D.   PAYTIME'S MOTION TO STRIKE PLAINTIFFS' CLASS ALLEGATIONS SHOULD BE DENIED BECAUSE PLAINTIFFS' CLASS ALLEGATIONS CANNOT BE ADJUDICATED ON A RULE 12 MOTION

As discussed above, Plaintiffs bring this action on behalf of themselves and members of the following proposed Class:  "All persons in the United States whose

personal and financial information was contained in or on Paytime's computer systems, whose personal and financial information was stolen or otherwise misappropriated as a result of the Data Breach."  Am. Compl. ¶ 30.  Paytime has moved to strike Plaintiffs' class allegations pursuant to Federal Rules of Civil Procedure 12(f) and 23(d)(1)(D), contending that "typicality cannot be established" because "[t]he named plaintiffs' lack of standing subjects their claims to individualized defenses which would not be applicable to the alleged unidentified class members who, according to the Complaint, have suffered actual damages as a result of the breach."  Def. Mem. at 29.

As a threshold matter, courts within the Third Circuit have consistently held that motions to strike under Rule 12(f) are an improper vehicle for attacking class action allegations.  Such motions violate two basic principles established by the Third Circuit. First, as stated in *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 308 (3d Cir. 2011), "the Rule 23 inquiry does not, and should not, involve a Rule (12)(b)(6)  inquiry."  Second, motions to strike pursuant  to Rule 12 violate the rule in *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 316 (3d Cir. 2008) that "the requirements set out in Rule 23 are not mere pleading rules.... The court may 'delve beyond the pleadings to determine whether the requirements for class certification are satisfied.'"  A court obviously cannot "delve beyond the pleadings" in consideration of a Rule 12 motion, which specifically confines

34

factual inquiry to the pleadings.  In fact, the Third Circuit explained that the 2003 Amendments to Rule 23 were intended to encourage courts to defer class certification consideration until later in the litigation when a more complete record was available. As Judge Scirica explained, "this change in language … reflects the need for a thorough evaluation of the Rule 23 factors – for this reason the rule does not 'require or encourage premature certification determinations.'"  *Id.* at 318.

For these reasons, courts within the Third Circuit typically reject motions to strike class action allegations under Rule 12.  *See, e.g., Landsman & Funk PC v. Skinder–Strauss Assocs.,* 640 F.3d 72, 93 n. 30 (3d Cir. 2011) (ruling on whether the class could potentially fit within Rule 23 determined on a motion to dismiss was premature); *Mills v. Serv. First Credit Union*, No. 11-686, 2011 WL 3236313 (M.D. Pa. July 28, 2011) (motion to strike class allegations was premature and proper avenue was to oppose the plaintiff's motion for class certification); *Vlachos v. Tobyhanna Army Depot Fed. Credit Unio*n, No. 11-0060, 2011 WL 2580657 (M.D. Pa. June 29, 2011) (same).[13]

---

[13] *P.V. ex rel. Valentin v. School Dist. of Phila.*, No. 11-04027, 2011 WL 5127850, at *3-4 (E.D. Pa. Oct. 31, 2011) ("Courts have good reason to decline to hastily strike class action allegations early in the litigation life cycle. Specifically, unless the parties have completed discovery and at least one party has moved for class certification, a court very rarely has the information necessary to conduct the "rigorous analysis" inherent in the class certification decision."); *Korman v. Walking  Co.*,  503  F. Supp. 2d 755  (E.D.  Pa.  2007) (denying  motion to strike class claims as premature in advance of discovery and class certification  briefing); *NBL Flooring, Inc. v. Trumball  Ins. Co.*, No. 10-4398, 2011  WL 4481918 (E.D.

Pa. Sept. 27, 2011) (same); *Andrews v. Home Depot, USA., Inc.*, No. 03-5200, 2005 WL 1490474, *3 (D.N.J.  June 23, 2005) ("the shape and form of a class action evolves only through the process of discovery.  After conducting discovery, Plaintiffs in fact may be unable to satisfy the strict requirements of Rule 23.  Yet at this juncture, and in consideration of the allegations of the Complaint in the light most favorable to Plaintiffs, the Court can envision a situation in which a hybrid class action might be maintained under Rule 23(c)(4).  It does not appear beyond doubt that no relief could be granted under any set of facts which could prove consistent with the allegations.") (citations omitted); *6803 Blvd. E., LLC v. DIRECTV, Inc.*, No. 12-2657, 2012 WL 3133680 (D.N.J. July 31, 2012) ("Generally courts do not consider whether a proposed class meets the Fed.R.Civ.P. 23 class requirements until after plaintiffs move for class certification. … This is not one of the rare cases "where the complaint itself demonstrates that the requirements for maintaining a class action cannot be met"); *Myers v. MedQuist, Inc.*, No. 05-4608, 2006 WL 3751210, at *4 (D.N.J. December 20, 2006) ("dismissal of class allegations at this sta[g]e should be done rarely and that the better course is to deny such motion because 'the shape and form of a class action evolves only through the process of discovery'") (citing *Gutierrez v. Johnson & Johnson, Inc.*, 2002 U.S. Dist. LEXIS 15418, *16 (D.N.J. 2002); *Abdallah v. Coca-Cola Co.*, 1999 WL 527835, 1999 U.S. Dist. LEXIS 23211 (N.D. Ga. July 16, 1999); 7AA Wright, Miller & Kane, Federal Practice and Procedure Civil 3d § 1785.3 (the practice employed in the overwhelming majority of class actions is to resolve class certification only after an appropriate period of discovery)); *Oravsky v. Encompass Ins. Co.*, 804 F. Supp. 2d 228, 241 (D.N.J. 2011) ("Defendant's motion is premature. Although the Court is somewhat skeptical that the facts will show that class resolution is appropriate in this case, the Court agrees that the motion is premature"); *see also* 1 Joseph M. McLaughlin, MCLAUGHLIN ON CLASS ACTIONS § 3.4 (7th ed. 2010) (Although a "motion to strike class action allegations may properly be filed before plaintiffs have filed a motion for class certification ... [i]f the viability of a class depends on factual matters that must be developed through discovery, a motion to strike will be denied pending the full-blown certification motion"); 5C Wright, Miller & Kane, FEDERAL PRACTICE & PROCEDURE CIVIL 3d § 1785.3, 2006 WL 3751210, at *5 ("As a practical matter, the court's [certification decision] usually should be predicated on more information than the complaint itself affords ... [and] [t]hus, courts frequently have ruled that discovery relating to the issue whether a class action is appropriate needs to be undertaken before deciding whether to allow the action to proceed on a class basis").

These decisions are consistent with the general jurisprudence that disfavors motions to strike. *See Rose v. Rothrock*, No. 08-3884, 2009 WL 1175614, at *7 (E.D. Pa. Apr. 29, 2009); *Tonka Corp. v. Rose Art Indus., Inc.*, 836 F.Supp. 200, 217 (D.N.J.1993) (Motions to strike are "not favored and usually will be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues"). This is because "[s]triking a pleading is a drastic remedy." *United Government Sec. Officers of America v. Exelon Nuclear Sec., LLC*, No. 11-1928, 2011 WL 5340043, at *2 (E.D. Pa. Nov. 4., 2011).

With respect to Paytime's argument that "the pleadings show that typicality cannot be established" (Def. Mem. at 29), it is well-settled that claims qualify as typical where "litigation of the named plaintiffs' personal claims can reasonably be expected to advance the interests of absent class members" (*Arch v. The American Tobacco Co., Inc.*, 175 F.R.D. 469, 478 (E.D. Pa.1997)) and that "factual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members." *Grasty v. Amalgamated Clothing & Textile Workers Union*, 828 F.2d 123, 130 (3d Cir. 1987). Moreover, "the existence of individual issues such as the extent of each class members' damages do not preclude the typicality requirement from

being satisfied." *Yeager's Fuel, Inc. v. Pennsylvania Power & Light Co.*, 162 F.R.D. 482, 487 n. 7 (E.D. Pa. 1995).

Here, the claims of the named Plaintiffs arise from the exact same event and course of conduct that gives rise to the claims of the class members, *i.e.*, the breach of Paytime's computer network and Paytime's negligence and breach of contract attendant thereto.  That Plaintiffs and class members may suffer injury and incur damages at different times and to varying extents does not preclude a finding that the typicality requirement is met.  In any event, this determination certainly cannot be made on the bare record of a motion to strike.  *See, e.g., McPeak v. S-L Distribution Co.*, No. 12-348, 2014 WL 4388562 (D.N.J. Sept. 5, 2014) ("[A] determination as to whether the class definition encompasses persons who have no viable cause of action should be made with the benefit of a full record.  Defendant has not cited any case where a court struck class allegations at the pleading stage on the basis of lack of standing by potential absent class members.  If all persons with a Distributor Agreement with S-L and warehouse space in New Jersey were franchisees under the meaning of the NJFPA, then they would each appear to have standing. Whether or not this is the case will turn upon whether Plaintiff can produce adequate relevant evidence, common to the class.  As the Court has discussed, Plaintiff is entitled to seek to develop such evidence through discovery.

38

Accordingly, Defendant's motion to strike the class action allegations must be denied as premature").

Therefore, prior to discovery and class certification briefing, Paytime is not entitled to strike Plaintiffs' class action allegations, and its motion to strike should be denied as premature.

**D.**     **<u>CONCLUSION</u>**

Based upon all of the foregoing, Plaintiffs respectfully submit that Defendant's Motion to Dismiss the Amended Complaint should be denied.

Dated:  September 24, 2014

Respectfully submitted:
By:  */s/ Gary F. Lynch*

**Carlson Lynch Sweet & Kilpela LLP**
Gary F. Lynch
glynch@carlsonlynch.com
Edwin J. Kilpela, Jr.
ekilpela@carlsonlynch.com
Sunshine R. Fellows
sfellows@carlsonlynch.com
Jamisen A. Etzel
jetzel@carlsonlynch.com
PNC Park
115 Federal Street, Suite 210
Pittsburgh, PA 15212
(412) 322-9243

**Lockridge Grindal Nauen PLLP**
Karen H. Riebel
khriebel@locklaw.com
Eric N. Linsk
rnlinsk@locklaw.com
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
(612) 339-6900

**Kraemer, Manes & Associates LLC**
Michael L. Kraemer
m@lawkm.com
David M. Manes
david@lawkm.com
Elizabeth Pollock-Avery
elizabeth@lawkm.com
US Steel Tower
600 Grant Street, Suite 660
Pittsburgh, PA 15219
(412) 626-5626

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was electronically filed with the Court this 24th day of September, 2014.  All counsel of record may access the foregoing document via the Court's ecf/electronic filing system.


Respectfully submitted:

By:  */s/ Gary F. Lynch*
Gary F. Lynch