IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DANIEL B. STORM, HOLLY P. WHITE, DORIS MCMICHAEL and KYLE WILKINSON, individually and on behalf of all others similarly situated, | : : : : : | Civil Action No.:14-cv-01138 |
| Plaintiffs, | : | THE HONORABLE JOHN E. |
| v. | : | JONES, III |
| PAYTIME, INC., | : | |
| Defendant. | : | |

**PAYTIME'S REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS PLAINTIFFS' COMPLAINT, OR IN THE
ALTERNATIVE, MOTION TO STRIKE CLASS ALLEGATIONS**

Defendant Paytime Harrisburg, Inc. d/b/a Paytime, Inc., by and through undersigned counsel, hereby submits its Reply to Plaintiffs' Opposition to Paytime's Motion to Dismiss for lack of standing pursuant to Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), to respond to certain arguments and points of law raised by Plaintiffs' Opposition. Paytime does not concede any points raised by Plaintiffs in their Response, but are simply providing certain clarifications to issues raised by Plaintiffs.

I.   **LEGAL ARGUMENT**

    A.   *Plaintiffs do not have standing because their alleged injuries are conjectural and hypothetical, not actual or imminent.*

Plaintiffs argue in their Opposition to Paytime's Motion to Dismiss that they have standing because the Complaint alleges that their personal information was

accessed and/or stolen. Plaintiffs' Memorandum at 16,17. This premise is not sufficient under the law of the Third Circuit as established in *Reilly v. Ceridian Corp.*, 664 F.3d 38 (3d Cir. 2011), a strikingly similar case involving allegations that plaintiffs faced an increased risk of identity theft due to a hacker's infiltration of a payroll processing firm's system containing plaintiffs' personal and financial information.

It is indisputable that in order for plaintiffs to meet their burden at the pleadings stage to establish standing, the face of the complaint must allege an injury-in-fact, one that is "(a) concrete and particularized, and (b) actual and imminent, not conjectural or hypothetical." *Reilly*, 664 F.3d at 41, 42 (*citing Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *Whitmore v. Ark.*, 495 U.S. 155 (1990)). "Allegations of hypothetical, future injury do not establish standing under Article III." *Reilly*, 664 F.3d at 41. Therefore, a plaintiff lacks standing if his injury stems from "an indefinite risk of future harms inflicted by unknown third parties." *Id*. at 42.

Contrary to Plaintiffs' assertion, the *Reilly* court's holding that the plaintiffs lacked standing did not hinge on whether the plaintiffs' data was "potentially" accessed (as alleged by the *Reilly* plaintiffs) versus "actually" accessed or stolen (as alleged by Plaintiffs herein). Rather, the court reasoned that absent allegations or evidence that the accessed/stolen data had been *misused*, there could be no actual injury. *Id.* at 43 (emphasis added). "The present test is actuality, not hypothetical

speculations concerning the possibility of future injury. Appellants' allegations of an increased risk of identity theft from a security breach are therefore insufficient to secure standing." *Id.* The court held:

> "We conclude that Appellants' allegations of hypothetical, future injury are insufficient to confer standing. Appellants' contentions rely on speculation that the hacker: (1) read, copied, and understood their personal information; (2) intends to commit future criminal acts by misusing the information; and (3) is able to use such information to the detriment of Appellants by making unauthorized transactions in Appellants' names. *Unless and until these conjectures come true, Appellants have not suffered any injury; there has been no misuse of the information, and thus, no harm.*"

*Id.* at 42 (emphasis added).

As in *Reilly*, the Plaintiffs have made no allegations of identity theft, or even attempted identity theft, instead alleging an increased risk of identity theft. These allegations are insufficient to confer standing. Additionally, as in *Reilly*, the only allegation of actual monetary expenditures by any of the named Plaintiffs were costs for credit monitoring. *Id.* at 38; Plaintiffs' Am. Compl. ¶ 28, 59. In *Reilly*, the Third Circuit joined a number of other jurisdictions holding that costs incurred for credit monitoring do not constitute an actual injury requisite for standing: "costs incurred to watch for a speculative chain of events based on hypothetical criminal conduct are no more 'actual' injuries than the alleged 'increased risk of injury.'" *Id.* at 46. *See also In re Sci. Applications Int'l Backup Tape Data Theft Litig.*, 2014 U.S. Dist. LEXIS 64125, *23 (D.D.C. May 9, 2014) (costs of proactive measures based on fear of future

harm that is not certainly impending do not create an injury-in-fact) attached hereto as Exhibit A; *In re Barnes & Noble Pin Pad Litig.*, 2013 U.S. Dist. LEXIS 125730, *12 (N.D. Ill. Sept. 3, 2013) (plaintiffs cannot manufacture standing by incurring costs in anticipation of a non-imminent harm) attached hereto as Exhibit B; *Brit Ins. Holdings, N.V. v. Krantz*, 2012 U.S. Dist. LEXIS 1398, *26 (N.D. Ohio Jan. 5, 2012) (expenditures to investigate the potential ramifications of the disclosure of personal information are insufficient to demonstrate an injury-in-fact; such an argument overlooks the fact that the expenditures are not the result "of any present injury, but rather of the anticipation of future injury that has not yet materialized") attached hereto as Exhibit C. Plaintiffs' allegations regarding the "damages arising from the costs associated with identity theft" are immaterial to the Court's standing analysis because they allege such damages were incurred by putative, as yet unnamed, class members. To establish standing, the named plaintiffs must show that they personally have been injured, not that injury has been suffered by other unidentified members of the class they seek to represent. *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976).

The remainder of the cases cited in Plaintiffs' Opposition brief are inapposite because they either: (1) involved allegations of misuse, *see e.g. In re Adobe Sys., Inc. Privacy Litig.*, 2014 U.S. Dist. LEXIS 124126, *31 (N.D. Cal. Sept. 4, 2014), attached hereto as Exhibit D, or (2) held contrary to the binding precedent in the Third Circuit

requiring allegations of the misuse of stolen personal information to confer standing, *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 2014 U.S. Dist. LEXIS 7353 (S.D. Cal. Jan. 21, 2014), attached hereto as Exhibit E; *Krottner v. Starbucks Corp.*, 628 F.3d 1139 (9th Cir. 2010); *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629 (7th Cir. 2007); *Moyer v. Michaels Stores, Inc.*, 2014 U.S. Dist. LEXIS 96588 (N.D. Ill. July 14, 2014) (granting defendant's motion to dismiss) attached hereto as Exhibit F; *Holmes v. Countrywide Fin. Corp.*, 2012 U.S. Dist. LEXIS 96587 (W.D. Ky. July 12, 2012) (granting defendant's motion to dismiss) attached hereto as Exhibit G; *McLoughlin v. People's United Bank, Inc.*, 2009 U.S. Dist. LEXIS 78065 (D. Conn. Aug. 31, 2009) (granting defendant's motion to dismiss) attached hereto as Exhibit H; *Ruiz v. Gap, Inc.*, 622 F. Supp. 2d 908 (N.D. Cal. 2009) (granting defendant's motion for summary judgment); *Caudle v. Towers, Perrin, Forster & Crosby, Inc.*, 580 F. Supp. 2d 273 (S.D.N.Y. 2008) (granting defendant's motion for summary judgment on plaintiff's negligence claims); *AFGE v. Hawley*, 543 F. Supp. 2d 44, 54 (D.D.C. 2008); *Brittingham v. Cerasimo, Inc.*, 621 F. Supp. 2d 646 (N.D. Ind. 2009); *Witriol v. LexisNexis Group*, 2006 U.S. Dist. LEXIS 26670 (N.D. Cal. Feb. 10, 2006) attached hereto as Exhibit I; *Arcilla v. Adidas Promotional Retail Operations, Inc.*, 488 F. Supp. 2d 965 (C.D. Cal. 2007). As noted parenthetically, a number of the foregoing cases that found standing in circumstances that the Third Circuit has rejected, nonetheless dismissed that complaint on other grounds,

frequently insubstantial allegations of harm under the applicable substantive law. *See, e.g., Moyer,* 2014 U.S. Dist. LEXIS 96588 at \*23, attached hereto as Exhibit F.

To have standing in a data breach case, a plaintiff must allege that his or her personal information was misused, not just accessed or stolen. Without misuse, a plaintiff has suffered no actual, present or imminent injury, but rather, fear of future injury "that is dependent on entirely speculative, future actions by an unknown third party," which is insufficient to confer standing. *Reilly,* 664 F.3d at 43. Therefore, the Plaintiffs have not met their burden to establish standing and their claims must be dismissed.

B.   *Plaintiffs have not sufficiently alleged an actual injury to support their negligence claim under Pennsylvania law*

Although Plaintiffs claim that they have sufficiently alleged an actual and present injury because Pennsylvania courts "routinely" find that individuals have protected privacy interest, the two cases they cite to do not support this contention. First, Plaintiffs cite to the dissent of *Telecomms. Network Design v. Brethren Mut. Ins. Co.,* 5 A.3d 331 (Pa. Super. 2010) which considered whether unsolicited advertising fell within an "advertising injury" clause of an insurance policy. *Id.* at 335. There, the complaint did not even reference an invasion of privacy. *Id.* at 336. The court considered the Telephone Consumer Protection Act (TCPA) which it held protect the "'right to seclusion,' rather than protecting against the disclosure of personal or private information. *Id.* Further, because a previous related action had been filed in

6

Illinois, the section cited to by Plaintiffs in their brief comes from an Illinois case, not a Pennsylvania decision. *See id.* at 339 (citing to *Valley Forge Insurance Co. v. Swiderski Electronics, Inc.*, 223 Ill. 2d 352, 860 N.E.2d 307, 317, 307 Ill. Dec. 653 (Ill. 2006)); Plaintiffs' Brief in Opposition at 25.

Similarly, the *Sapp Roofing* case considered whether a private contractor's payroll records were subject to public access pursuant to the Right to Know Act. *Sapp Roofing Co. v. Sheet Metal Workers' Int'l Assoc.*, 713 A.2d 627 (Pa. 1998). The decision recognized that such information could include the redaction of personal information such as Social Security numbers names, and addresses, and thus did not even tangentially consider the effect of any disclosure of this information. *Id.* at 111-112. The court did not consider the issue of whether the theft of personal information by unauthorized third parties results in an actual injury so as to permit a plaintiff to allege a cause of action against the entity experiencing the theft. Simply put, Plaintiffs' own cases do not support its contention that they have alleged an actual injury under Pennsylvania law, and thus their negligence claims should be dismissed as a matter of law.

C.    *Plaintiffs are barred from recovery under their negligence claims due to the economic loss doctrine*

Plaintiffs additionally confuse the issue of the economic loss doctrine as it applies to their claims. Plaintiffs rely heavily on *Bilt-Rite Contractors, Inc. v. Architectural Studio*, 866 A.2d 270, (Pa. 2005) in support of an alleged test regarding

the applicability of the economic loss rule. See Plaintiffs' brief at 27-29. However, a reading of *Bilt-Rite* makes abundantly evident that the test outlined by the Pennsylvania Supreme Court is in relation to negligent misrepresentation cases only, not to the economic loss doctrine as a whole. In *Bilt-Rite*, the Pennsylvania Supreme Court adopted the definition of negligent misrepresentation as contained in Section 552 of the Restatement of Torts, and held that the economic loss doctrine would not bar recovery in a case brought under Section 552. Tellingly, the test set forth by the Plaintiffs supposedly showing where the economic loss doctrine is not applicable is not actually found anywhere in the opinion. Rather, the test apparently paraphrases the definition of negligent misrepresentation in Section 552. *Id.* at 479 (stating that negligent misrepresentation "applies only to those businesses which provide services and/or information that they know will be relied upon by third parties in their business endeavors, and it includes a foreseeability requirement, thereby reasonably restricting the class of potential plaintiffs.") The Plaintiffs then attempt to apply this holding to its general negligence allegations, which contradicts established Pennsylvania law on the economic loss doctrine.

In fact, other cases cited to by Plaintiffs actually provide support for the application of the economic loss doctrine to the present set of facts. *Aikens v. Baltimore & O. R. Co.* established that Pennsylvania law will not extend liability under negligence to a purely economic loss. 501 A.2d 277, 279 (Pa. Super. 1985)

8

(holding that "[s]uch an extension would clearly lead to problems in consistency and foreseeability, and could be harmful in scope.") *Adams v. Copper Beach Townhome Communities*, analyzed Pennsylvania's Storm Water Management Act (SWMA), and encouraged dismissal of negligence actions alleging purely economic loss. 816 A.2d 301, 307 (Pa. Super. 2003). "Furthermore, we conclude that the term 'injury' as used by the SWMA is analogous to the 'physical injury or property damage' requirements of the Economic Loss Doctrine… With regard to limitation of liability, this court stated in *Aikens* that 'to allow a cause of action for negligent cause of purely economic loss would be to open the door to every person in the economic chain of the negligent person or business to bring a cause of action.' Here, as in *Aikens*, to permit recovery for negligent cause of purely economic loss is 'inappropriate and a danger to our economic system'." *Id.*

Similarly, Plaintiffs rely upon *Sovereign Bank*, which involved an appeal from the court's dismissal of claims arising out of the theft of credit card information by a third party from a company's computer files, the Third Circuit stated that the Middle District had correctly held that the plaintiffs' negligence claims were barred by the economic loss doctrine. *Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162, 178. Like the present Plaintiffs, the plaintiffs in *Sovereign Bank* relied heavily on the *Bilt-Rite* decision to try to "get around the fatal limitation of the economic loss doctrine" and recover costs associated with replacing customer credit cards following

9

the breach. *Id.* at 176. Defendant refers to its original Motion to Dismiss for a more detailed explanation of Sovereign Bank. It is reiterated here to emphasize Plaintiffs' misplaced confidence in its support of their claims. For all of these reasons, Defendant respectfully submits that the economic loss doctrine bars recovery under Plaintiffs' negligence claims as alleged in Plaintiffs' Amended Complaint.

D.   *Plaintiffs claims under breach of contract fail because Plaintiffs cannot prove that they are direct or intended beneficiaries to any contract to which Paytime is a party*

Plaintiffs' claims for breach of contract should be dismissed as well. Plaintiffs do not properly summarize Pennsylvania law as to third party beneficiaries. Plaintiffs' use of *Mylan* for the proposition that any "plaintiff not expressly named as a beneficiary to a contract is not required to show compelling circumstances in order to prove his beneficiary status" is misleading. See *Mylan, Inc. v. Zorich*, 2012 U.S. Dist. LEXIS 19515 (W.D. Pa. 2012) at *21 (attached hereto as Exhibit J). Rather, the appropriate test can be found in the *Scarpitti* decision, which the Plaintiffs rely upon heavily. In *Scarpitti*, the Pennsylvania Supreme Court stated, "we hold that a party becomes a third party beneficiary only where both parties to the contract express an intention to benefit the third party in the contract itself... unless, *the circumstances are so compelling* that recognition of the beneficiary's right is appropriate to effectuate the intention of the parties, and the performance satisfies an obligation of the promise to pay money to the beneficiary or the circumstances indicate that the

10

promise intends to give the beneficiary the benefit of the promised performance." 609 A.2d 147, 150-151 (Pa. 1992) (emphasis added). In their Amended Complaint, Plaintiffs do not include any contractual provision that supports their bald allegation that they are somehow a "direct" beneficiary of any contract, nor do they allege any compelling circumstances that recognition of any claimed right is appropriate to effectuate the intention of Paytime and their respective employers. See Amended Complaint, attached to Defendant's Motion to Dismiss as Exhibit A at ¶¶ 53-59. Defendant therefore respectfully submits that Plaintiffs claims against it for breach of contract should be dismissed.

Respectfully submitted,

**LEWIS BRISBOIS BISGAARD & SMITH, LLP**

**BY:**   /s/Claudia D. McCarron
       CLAUDIA D. McCARRON
       KATHRYN C. MELLINGER
       *Attorneys for Defendant, Paytime, Inc.*

Dated: October 7, 2014